UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN G. GERMAIN, | ) | No. SA CV 14-1295-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 14, 2014, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on September 17, 2014, and October 6, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 5, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on July 11, 1959. [Administrative Record ("AR") at 128.] He has past relevant work experience as a sales representative and general manager. [AR at 21, 46-47.]

On March 16, 2011, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since February 1, 2011. [AR at 16, 128-29.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 16, 74.] A hearing was held on September 6, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 28-51.] A vocational expert ("VE") also testified. [AR at 43-50.] On October 2, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from February 1, 2011, the alleged onset date, through October 2, 2012, the date of the decision. [AR at 16-23.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 12.] When the Appeals Council denied plaintiff's request for review on June 24, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 1, 2011, the alleged onset date.[1] [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of rheumatoid arthritis of the hands, feet, knees, elbows, and wrists; and fatigue. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ further found that plaintiff retained the residual

/
/
/

---

[1] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 18.]

functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b)[3] except as follows:

> [L]ifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting for 6 hours in an 8-hour workday with normal breaks; standing and/or walking for 6 hours total in an 8-hour workday with normal breaks; occasional stooping, balancing, kneeling, crouching, crawling, and climbing stairs and ramps; frequent fine and gross manipulation bilaterally; and no climbing ladders, ropes, or scaffolds.

[AR at 19.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a sales representative and as a general manager, both as generally performed. [AR at 21-22, 47-48.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of February 1, 2011, through October 2, 2012, the date of the decision. [AR at 22.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he failed to articulate legally sufficient reasons for discounting plaintiff's subjective symptom complaints regarding his hand use and fatigue, including by giving the greatest weight to the "inadequate" opinion of the non-examining consulting physician, J. Hartman, M.D. [JS at 4-12, 18-21.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

### A. OPINION OF NON-EXAMINING PHYSICIAN

On April 12, 2011, Dr. Hartman reviewed plaintiff's medical records from Bristol Park Medical Group. [AR at 328 (see also AR at 196-322).] In his review, Dr. Hartman stated:

> Claimant alleges R/A [rheumatoid arthritis] however recent labs from May-10 and July-10 both reveal he is negative for any R/A. There are recent X-rays from February 28, 2011 showing that he may have some musculoskeletal causes for his joint pain, BMI 33[.] Claimant has not alleged any specific problem with his back.

[AR at 331 (referring to AR at 249-51, 260-62).] Dr. Hartman opined that based on his review of the record, plaintiff was capable of performing light exertional activity with occasional postural limitations (climbing, balancing, stooping, kneeling, crouching, and crawling).[4] [AR at 332 (see also AR at 325).]

The ALJ gave "the greatest weight" to the opinion of Dr. Hartman "as there is no conflicting functional capacities assessment from the claimant's treating physicians."[5] [AR at 20 (see also 323-27, 328-32).] However, the opinion of a non-examining physician may only serve as a basis to reject the opinion of a treating physician where the non-examining physician's opinion is consistent with other independent evidence in the record. Ryan, 528 F.3d at 1202 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician") (internal citation and quotation marks omitted).

Here, contrary to Dr. Hartman's record review, the evidence clearly shows that plaintiff's "rheumatoid factor" was positive at 92 in May 2010 [AR at 262], and at 84 in July 2010 [AR at 251], and that the range should be less than 14. [See AR at 251, 262.] In fact, regarding the May 19, 2010, lab results, plaintiff's physician noted in his report, "ERROR: after re-reviewing the labs and clinical picture, the patient does most likely have RA and given the elevated ESR and RF he has

---

[4] Dr. Hartman also found plaintiff had no manipulative limitations, i.e., reaching, handling, fingering, and feeling. [AR at 325.]

[5] Plaintiff did not undergo a consultative examination. [See JS at 10.] Plaintiff contends the ALJ "scheduled a medical advisor for the hearing" who did not appear. [JS at 20 (citing AR at 16, 30, 87, 393).]

poor prognostic factors." [AR at 262.] With regard to the July 20, 2010, lab results, the physician noted that plaintiff's "labs still show elevated RF" and "as of now all labs are normal except RF is still elevated." [AR at 251.] Thus, Dr. Hartman's statement regarding plaintiff's May and July 2010 lab results being negative for rheumatoid arthritis is patently inaccurate, and Dr. Hartman appears to have relied on faulty data when arriving at his opinion that plaintiff was capable of performing light exertional activity with occasional postural limitations, and no manipulative limitations. [AR at 325, 327, 328-32.] Dr. Hartman provides no analysis as to the basis of his opinion. Moreover, Dr. Hartman's statement generally implies that although plaintiff alleges rheumatoid arthritis, since his tests are negative (which, in fact, they are not) his joint pain may actually be attributable to other factors and, therefore, plaintiff's allegations of rheumatoid arthritis are not fully credible.

The Court acknowledges that despite the "great weight" he gave to Dr. Hartman's opinion, the ALJ nevertheless found that plaintiff has the severe impairment of rheumatoid arthritis of the hands, feet, knees, elbow, and wrists. [AR at 18.] However, Dr. Hartman's reliance on inaccurate information in arriving at his opinion concerning plaintiff's functional limitations was not harmless error because the ALJ also clearly adopted Dr. Hartman's conclusion -- which may have been based on Dr. Hartman's reliance on inaccurate information regarding plaintiff's rheumatoid factor lab results -- that plaintiff was capable of performing light exertional activity with occasional postural activity.

**B.   CONCLUSION**

Based on the foregoing, the Court cannot confidently conclude that although Dr. Hartman's opinion may be the only functional assessment of record, his opinion "is consistent with other independent evidence in the record" that standing by itself constitutes substantial evidence justifying the ALJ's reliance on that opinion. Remand is warranted on this issue.[6]

---

[6] Because the reconsideration of the medical evidence may impact the ALJ's finding regarding plaintiff's credibility, the ALJ on remand should reconsider plaintiff's subjective symptom complaints.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1041 (9th Cir. 2007); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, because the ALJ erred in affording Dr. Hartman's opinion "the greatest weight," there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall allow plaintiff to supplement the record with any new medical evidence. Second, the ALJ shall fully develop the record relating to plaintiff's physical impairments by ordering a consultative examination or examinations, with the appropriate specialist(s). The consultative examiner(s) shall be provided with all of plaintiff's medical records. Third, the ALJ shall reassess the entire medical record, including plaintiff's treating records, all imaging and laboratory test results, the new consultative examination(s), and all other medical evidence of record relevant to plaintiff's claim for DIB. As appropriate, the ALJ may request the treating and nontreating sources to provide additional evidence and/or further clarification of their opinions and medical source statements about what plaintiff can still do despite his impairments. The ALJ must then explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Fourth, at the administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination. Fifth, the ALJ shall reassess plaintiff's credibility and provide specific, clear and convincing

reasons for discrediting his testimony, if warranted. Sixth, based on his reevaluation of the entire medical record, including the new consultative examination, the ALJ shall determine plaintiff's RFC. Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform his past relevant work or any other work existing in significant numbers in the regional and national economies.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 12, 2015

                                                      PAUL L. ABRAMS
                                      UNITED STATES MAGISTRATE JUDGE